**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-22437-FAM

TINA MARIE VILLAS,

        Plaintiff,

   vs.

ANDREW M. SAUL,
Commissioner of Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiff Marie Villas' Motion for Summary

Judgment (ECF No. 18) and Defendant Andrew Saul's, Commissioner of the Social Security

Administration, Motion for Summary Judgment (ECF No. 19). The cross motions have been

referred to the undersigned for a Report and Recommendation (ECF No. 2). The undersigned has

fully considered the Motions and the record and is otherwise duly advised in the matter.

## I.    PROCEDURAL BACKGROUND

This case involves an application for social security disability benefits under the Social

Security Act ("Act"), 42 U.S.C. § 401 *et seq*. Plaintiff initially filed a claim for social security

disability insurance benefits on March 3, 2017 (R. 156–67). Plaintiff's claim alleged that her

disability began on January 1, 2016 (*Id.*). Plaintiff's claimed disability is back pain associated with

scoliosis and nerve damage (R. 59). Plaintiff's claim was denied on May 17, 2017, and that denial

was upheld on July 27, 2017 (R. 59–68, 72–80). Plaintiff filed a written request for a hearing before

an Administrative Law Judge ("AJL") (R. 95–96).

1

The hearing was held on January 15, 2019, before Administrative Law Judge ("ALJ") Clara H. Aranda (R. 29–58). At the hearing, Plaintiff was represented by counsel, and both Plaintiff and Vocational Expert ("VE"), Jennifer Guediri ("Guediri"), testified before the AJL (*id.*).

On July 31, 2019, the ALJ issued a decision denying Plaintiff's application for disability insurance benefit and supplemental income, finding that Plaintiff was not disabled within the meaning of the Act (R. 22). Plaintiff requested a review of the ALJ's decision, which was denied by the Appeals Council on April 22, 2020 (R. 1–6). This was the final act of the Commissioner. Plaintiff is seeking judicial review of the ALJ's decision, and both parties have moved for summary judgment. Plaintiff has exhausted her administrative remedies and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## II.    STANDARD OF REVIEW

### A.  Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment

for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### B.  Regulatory Framework

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work found in

the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

### III.  THE RECORD

#### A.  Hearing Testimony

##### i.  Plaintiff's Testimony

Plaintiff was fifty years-old at the time of her hearing (R. 33). She is five feet and two inches tall and weighs 230 pounds (R. 43). Plaintiff resided in Miami with her husband, two adult children, and her mother-in-law (R. 33–34). Plaintiff completed high school and attended some college (*id.*). Plaintiff worked for Jackson Health System in Miami, Florida, from 1999 to 2014 (R. 35). First, Plaintiff worked as a payroll coordinator for Jackson South Community Hospital, until she was transferred to Jackson North (R. 34). She eventually came back to Jackson South where she continued doing payroll work in "Environmental Services" (*id.*). Her position as a payroll coordinator required that she make all the paychecks and train other floor managers on making paychecks so they could handle payroll from their locations (R. 35). Her job entailed lifting boxes of paychecks, estimated to weigh approximately twenty pounds (*id.*). While working as a payroll coordinator in Environmental Services, Plaintiff worked with inventory, loaded shelves with toilet paper, paper towels, gloves, and cleaning supplies, and brought supplies to various floors of the hospital (R. 34–36). Plaintiff averred that she could not lift any more than twenty pounds of supplies (R. 36). She was terminated from Jackson Hospital in 2014 because she no longer fit the terms and conditions of the position (R. 37). Plaintiff continued looking for clerical positions after she was terminated, but she was unsuccessful (*id.*).

Plaintiff claimed that her disability began on January 1, 2016 (*id.*). At the hearing, Plaintiff testified that she became disabled in 2016 because her back pain made it uncomfortable for her to

sit for long periods of time (*id.*). Plaintiff believed that her back pain stemmed from sciatic pain and her scoliosis, a condition she was born with (R. 38). In addition to back pain, Plaintiff also complained of pain in her left knee and her left ankle (*id.*). The pain in her left knee began "more or less [at] the same time" as the back pain in 2016, but she had been suffering from ankle pain for longer (*id.*). Plaintiff was unsure about the root cause of her ankle pain but suspected that wearing high heels contributed to a tendon issue on the inside of her ankle (*id.*). Plaintiff also testified that she began having carpal tunnel symptoms, specifically numbness, in both hands while she was still working, and numbness from the elbow down to her hand in her right arm (R. 40–41).

As a result of her pain, Plaintiff testified that she could only walk for approximately twenty to thirty minutes at a time before having to take a rest (R. 41). She stated that she could stand for thirty minutes at a time before having to shift positions or sit down (R. 41–42). Plaintiff could only sit or rest for about thirty minutes before having to either shift positions or stand up to stretch (R. 42). To treat this pain, Plaintiff takes numerous medications including Tramadol, Omeprazole and Gabapentin (R. 48). Her medications, however, are alleged to make Plaintiff drowsy and groggy, which causes her to sleep through the day, and also makes it difficult for her to concentrate and drive (R. 37; 48). Plaintiff did not think she would be able to work while on her medications due to their side effects, which her doctor said were normal for those medications (R. 49). Plaintiff testified that she has not submitted to a more rigorous treatment of epidural steroid injections in her spine because she feels terrified of the injections (R. 40). However, Plaintiff did receive an injection in her elbow to treat her carpal tunnel (*id.*)

Despite the pain, Plaintiff testified that she was capable of lifting and carrying ten to fifteen pounds (*id.*). She is capable of taking care of her personal hygiene without help from others; can

cook for herself and her family with brief pauses in between; can do housework, such as dusting, but mostly relies on her children to help with housework; and can shop for groceries (R. 44–45).

### ii. Vocational Expert Testimony

VE Guediri testified at the hearing before the ALJ. Guediri summarized Plaintiff's past relevant work as a payroll clerk as sedentary work, semi-skilled, a specific vocational level ("SVP") of four, and a Dictionary of Occupational Titles ("DOT") number of 215.382-014 (R. 52). Guediri also found Plaintiff's past relevant work to include administrative clerk, which was described by Guediri as light work, semi-skilled, an SVP of four, and a DOT number of 219.362-010 (*id.*). When presented with the hypothetical worker of the same age, with the same education and work experience as Plaintiff, who is limited to light exertional work; who can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can frequently balance; can occasionally stoop, kneel, crawl, and crouch; must avoid concentrated exposure to vibrations; must avoid constant exposure to workplace hazards such as open machinery and unprotected heights; must avoid concentrated exposure to extreme cold, wetness, and humidity; and is limited to frequent handling and fingering with the bilateral upper extremities, Guediri testified that the hypothetical worker would be able to perform Plaintiff's past relevant work of payroll clerk and administrative clerk (R. 52–53).

When the initial hypothetical was modified to be limited to sedentary exertional work, rather than light work, Guediri testified that the hypothetical worker would be able to work only as a payroll clerk (R. 53). When further questioned by Plaintiff's counsel, Guediri explained that being off task for fifteen percent of the time, or more, would not be permitted for a semi-skilled position; that for an unskilled position, being off task for ten percent of the time, or more, would not be permitted; and being absent from work for up to one day per month would not be permitted

for a semi-skilled worker (R. 56). Guediri testified that all her responses were consistent with the DOT, supplemented by her experience in the field (*id.*).

### B.  Summary of Relevant Medical Evidence

#### i.  Dr. Mouhanna

Plaintiff has been treated by Dr. Joseph Mouhanna, M.D., ("Dr. Mouhanna"), a pain management specialist, since March 2, 2017 (R. 239). Plaintiff was forty-eight years old at the time of initial evaluation (*id.*). Plaintiff sought care from Dr. Mouhanna for her low back pain, left knee pain, left ankle pain, numbness and tingling in all fingertips and toes (*id.*). Dr. Mouhanna noted that Plaintiff had a history of low back and bilateral lower extremity pain, and paresthesia in the lower extremities with a decline in physical function and ambulation (*id.*). Plaintiff told Dr. Mouhanna that her low back pain began in 1995 after giving birth; that her left knee pain began in 2016 while exercising; and her left ankle pain and numbness and tingling in her extremities began in 2015 without precedent (*id.*). Plaintiff described her pain as worsening with time (*id.*). The pain was described as sharp, stabbing, shooting, pressure, and aching (*id.*).

During that first visit, Dr. Mouhanna's took x-rays of Plaintiff's cervical spine, lumbar spine, left ankle, left knee and an ultrasound of her lower extremities. These tests, along with a physical examination, led Dr. Mouhanna to make the following diagnoses: Plaintiff has intervertebral disc disorders with radiculopathy, or pinched nerves,[1] in the cervical and lumbar region; pain in unspecified knee; low back pain; pain in left knee; pain in left ankle and joints of left foot; pain in unspecified ankle and in joints of unspecified foot; adolescent idiopathic scoliosis at an unspecified site; and other hereditary and idiopathic neuropathies (R. 243).

---

[1] *See Radiculopathy* (July 18, 2021), https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy.

The March 2017 x-rays of Plaintiff's left knee and ankle revealed no fracture, dislocation or degenerative changes, but showed narrowed joint space and arthritis in her left knee (R. 239-40). The x-ray of Plaintiff's cervical spine revealed that Plaintiff's vertebral body heights were preserved, but she had straightening of lordosis with multilevel disc narrowing and facet hypertrophy, or swelling[2] (R. 239). Kyphosis and scoliosis were also noted in the x-ray of the cervical spine (*id.*). The x-ray of Plaintiff's lumbar spine similarly showed diminished disc space, facet arthropathy, straightening of lordosis and severe scoliosis, but also found her vertebral body heights to be preserved (R. 240). Imaging of Plaintiff's lower extremities revealed "no definite evidence of calcific plaque in either leg," and no evidence of stenosis or plaque formation (R. 240). Nerve conduction studies showed that Plaintiff has cervical radiculopathy on her right-side extremities, mild carpal tunnel syndrome affecting sensory components on her right-side extremities, and peroneal axonal motor neuropathy, noted worse on her right side (R. 239). Dr. Mouhanna advised Plaintiff to manage her weight and consider physical therapy. Dr. Mouhanna also started Plaintiff on three anti-inflammatory and pain medications (R. 243-244).

Plaintiff underwent additional imaging of her lumbar spine in April of 2017, revealing no significant intra or extradural abnormalities (R. 246-247).

On July 30, 2018, Plaintiff returned to Dr. Mouhanna with complaints of pain in her right elbow (R. 271). Pain in right elbow was added to Dr. Mouhanna's assessment of Plaintiff, while adolescent idiopathic scoliosis at an unspecified site and other hereditary and idiopathic neuropathies were removed from the assessments (R. 274). On August 14, 2018, Plaintiff received an injection of 40 mg of Depo-Medrol into her right elbow (R. 276).

---

[2] *See Facet Joint Syndrome* (July 18, 2021), https://www.cedars-sinai.org/health-library/diseases-and-conditions/f/facet-joint-syndrome.html.

On August 30, 2018, Dr. Mouhanna discontinued Plaintiff on Celebrex 200mg and instead prescribed Ibuprofen 800mg, orally, three times a day (R. 286). All other medications remained the same (*Id.*). Plaintiff was again encouraged to exercise and participate in weight management counseling (R. 287). On November 29, 2018 Dr. Mouhanna ordered a back brace to limit Plaintiff's mobility of the trunk and again prescribed physical therapy for Plaintiff's lower back and legs, neck, and upper extremities (R. 302; 307).

During Plaintiff's monthly visits from March 2017 through December 2018, Dr. Mouhanna noted that Plaintiff had full range of motion in her upper extremities; pain to range of motion in her lower extremities; full range of motion to flexion, extension, left and right lateral rotation, and no muscle spasms in her cervical spine; and decreased range of motion with pain in her lumber spine with  muscle spasm present, among other findings (R. 255; 260-261; 265; 271; 281; 286; 291; 296; 301; 306; 310).

On January 8, 2019, Dr. Mouhanna filled out a disability impairment questionnaire (R. 314-318). Dr. Mouhanna opined that in an 8-hour workday, Plaintiff could perform a job in a seated position for 2 hours a day and from a standing position for 1-2 hours per day (R. 316). The questionnaire stated that Plaintiff would have to get up from a seated position every 20-30 minutes for 15-20 minutes at a time, though it is not necessary for her to elevate her legs (*id.*). Dr. Mouhanna also opined that Plaintiff could frequently lift and carry 5-10 pounds, and occasionally lift and carry 10-20 pounds; that heavy lifting could cause her symptoms to increase; that Plaintiff did not have significant limitations in reaching, handling or fingering; that Plaintiff would require unscheduled breaks every 2-3 hours for 20-30 minutes at a time; that Plaintiff's symptoms would occasionally be severe enough to interfere with attention and concertation; and that Plaintiff would likely be absent 2-3 times a month (R. 316-318).

### ii. State Agency

On May 17, 2017, Natasha Kendrick ("Kendrick") submitted a disability determination (R. 59). Based on a review of Plaintiff's medical records, Kendrick determined that Plaintiff could occasionally lift and/or carry ten pounds, frequently lift and/or carry ten pounds; stand or walk with normal breaks for a total of two hours; sit with normal breaks for a total of six out of eight hours in a workday; and may occasionally balance and climb ramps/stairs, ladders/ropes/scaffolds, stoop/kneel/crouch/crawl (R. 65–66). Kendrick stated that Plaintiff had the residual functional capacity to perform Plaintiff's past relevant work as an Administrative Assistant and Payroll Coordinator (R. 67–68). Ultimately, Kendrick determined Plaintiff as not disabled based on Kendrick's documented findings (R. 68).

On July 26, 2017, Dr. Thomas Lawhorn ("Dr. Lawhorn") completed a disability determination reconsideration (R. 72). Despite noting that Plaintiff suffered from severe impairments, Dr. Lawhorn found that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk with normal breaks for a total of two hours; and sit with normal breaks for a totally of six of eight hours in a workday (R. 76–77). As far as Plaintiff's postural limitations, Dr. Lawhorn found that Plaintiff could frequently balance and occasionally climb ramps/stairs, ladders/ropes/scaffolds, stoop/kneel/crouch/crawl (R. 77). Dr. Lawhorn determined that Plaintiff was capable of sedentary work (R. 80). In making these findings, Dr. Lawson relied upon Plaintiff's past medical records (R. 75-78). Dr. Lawhorn did not make a determination regarding Plaintiff's ability to perform past relevant work because all potentially applicable Medical-Vocational guidelines suggest a finding of "not disabled," so Plaintiff should have been able to adjust to other work (R. 79). Based on Dr. Lawhorn's documented findings, he determined Plaintiff to be not disabled upon reconsideration (R. 80).

### C.  The ALJ's Decision

After reviewing the evidence and conducting the relevant inquiry, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of January 1, 2016 and denied her application for benefits (R. 22). The ALJ first determined that claimant meets the insured status requirements of the SSA and that the Plaintiff had not engaged in substantial gainful activity since January 1, 2016 (R. 17). The ALJ next found Plaintiff to suffer from the following severe impairments: degenerative disease of the cervical spine with radiculopathy, kyphosis, scoliosis, right peroneal axonal neuropathy, degenerative disc disease of the lumbar spine, and obesity (R.17). However, the ALJ found Plaintiff's gastroesophageal reflux disease not to be severe because it does not significantly limit the ability to perform basic work activities for 12 consecutive months (*id.*). Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the Listings (R.18). The ALJ then determined that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with specified limitations (*id.*). In making this determination, the ALJ considered Plaintiff's subjective complaints, but found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (R. 19). The ALJ also considered the opinion of Dr. Mouhanna contained within his disability questionnaire, which she accorded little weight because it was inconsistent with his treatment notes (R.21). The ALJ did, however give considerable weight to those opinions contained within Dr. Mouhanna's treating and consulting notes (*id.*). The State Agency Medical Consultants' opinions were also considered and accorded great weight because they were consistent with the objective evidence in the record and the consultants had an understanding of Social Security disability program policies and their

evidentiary requirements (*id.*) The ALJ ultimately determined that, based on the VE's testimony, Plaintiff was capable of performing her past relevant work as a payroll clerk, and that Plaintiff has not been under a disability from the alleged onset date (R. 21-22).

## IV.  DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed, or that the matter should be remanded for further administrative proceedings because the ALJ (1) failed to follow the treating physician rule in according Dr. Mouhanna's opinion little weight; (2) erred in according great weight to the opinions of the state agency reviewers, who had never examined or treated Plaintiff; and (3) failed to properly assess Plaintiff's subjective symptoms testimony. In response, Defendant avers that the ALJ (1) properly considered and weighed the opinion on Plaintiff's treating physician; (2) did not err by relying on a non-examining consultant's opinion to the extent it is consistent with the medical evidence; and (3) that the ALJ's symptom evaluation determination is supported by substantial evidence.

### A.  Assessment of Plaintiff's Treating Physician

Plaintiff contends that the ALJ lacked good cause to accord little weight to Dr. Mouhanna's opinion, and thus the RFC is not supported by substantial evidence. Defendant, however, insists that substantial evidence supports the ALJ's findings.

In determining the claimant's RFC, the ALJ evaluates every medical opinion received and assigns it a particular amount of weight. *See* § 404.1527(c). The ALJ generally grants more weight to a medical opinion the longer a medical provider has treated a claimant and the more knowledge that the provider has about a claimant's impairment. 20 C.F.R. § 404.1527(c)(2)(i), (ii). The ALJ assigns more weight to a provider's opinion based on the amount of "relevant evidence" provided to support it, as well as the strength of her explanation.  *Id*. § 404.1527(c)(3). The ALJ reserves certain administrative findings for her own determination, and thus a provider's opinions

that a claimant is disabled and that the claimant's impairment is severe enough to meet one of the listed impairments are not due special significance. *Id.* § 404.1527(d).

The ALJ must give a treating provider's medical opinion "substantial or considerable weight," unless the ALJ clearly articulates good cause for discrediting that opinion. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 861 (11th Cir. 2019). Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* When the ALJ articulates specific reasons for failing to give the opinion of a treating provider controlling weight, and those reasons are supported by substantial evidence, the court should not reverse the Commissioner's decision. *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2015)); s*ee also Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("When the administrative law judge's articulated reasons for assigning limited weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error.")  Furthermore, "[t]o the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination." *Hunter*, 609 F. App'x at 558.

Here, the ALJ accorded little weight to Dr. Mouhanna's opinions contained within his disability questionnaire, including that that the claimant was limited to a range of light work, could be seated for two hours, and stand/walk for 1 to 2 hour; that heavy lifting could worsen her lower back symptoms; and that she would likely be absent two to three days per month (R. 21). The ALJ explained that little weight was accorded to these opinions because they were inconsistent with his treatment notes (*id.*). Specifically, the ALJ noted these opinions were inconsistent with the MRI of Plaintiff's lumbar spine showing that there were no significant intra or extradural abnormalities and that the somatic alignment and disc space height and hydrations were maintained; the fact that

13

Plaintiff was encouraged to exercise, try physical therapy, and was repeatedly given BMI counseling; and the fact that Dr. Mouhanna has not generally provided the claimant with the type of medical treatment one would expect for an individual experiencing the pain levels described by the claimant (*id.*).[3]

Plaintiff avers that in making her determination, "the ALJ neglected significant evidence in Dr. Mouhanna's treatment notes that fully support his opinion," including cervical spine x-rays showing straightening of lordosis, multilevel disc narrowing and facet hypertrophy at C4-C5, C5-C6, and C6-C7, as well as kyphosis and scoliosis; an EMG study showing C6 radiculopathy on the right, mild right carpal tunnel syndrome, and peroneal axonal motor neuropathy; lumbar spine x-rays showing diminished disc space and facet arthropathy at L4-L5 and L5-S1, a loss of lordosis, and severe scoliosis; and a lumbar MRI showing disc desiccation from L1-L2, L3-L4, and L3-L4 levels (ECF No. 18 at 11). However, such evidence was not ignored, but specifically recited in the ALJ's determination:

> Imaging of her cervical spine performed in the AP/Lateral and Oblique views demonstrated that the vertebral body heights were preserved, she had straightening of lordosis with multilevel disc narrowing and facet hypertrophy at C4-5, C5-6, C6-7. The x-rays also showed kyphosis and scoliosis. An EMG showed radiculopathy at CG on the right, and peroneal axonal motor neuropathy. Imaging of her lumbar spine showed that the vertebral bodies heights were preserved, diminished disc space at L4-L5, LS-Sl, facet arthropathy, loss of lordosis, and scoliosis. Imaging of her left ankle and knee showed no fractures, degenerative changes . . . An MRI of her lumbar spine in April 2017 showed some disc desiccation from Ll-L2, L2-L3 and L3-L4 levels, but there were no significant intra or extradural abnormalities.

---

[3] Plaintiff faults the ALJ for not identifying what treatment *would* support Dr. Mouhanna's opinion, which Plaintiff argues shows that the ALJ replaced her own expertise (on what kind of treatment was necessary) for that of the treating physician. On this record, as noted by the ALJ, there is no evidence that Plaintiff "sought aggressive treatment" but rather has managed her pain exclusively with pain medication prescribed by Dr. Mouhanna (R.20). The ALJ's observation that Dr. Mouhanna has not recommended more invasive or aggressive treatment is not tantamount to offering her opinion that such a surgery is necessary. Plaintiff's argument on this point is misplaced.

(R. 19-20). Plaintiff also claims that the ALJ ignored many other abnormalities frequently reported by Dr. Mouhanna on examination, such as antalgic gait, pain with lower extremity joint range of motion, and decreased lumbar range of motion with pain, among others (ECF No. 18 at 13). These abnormalities were not only directly addressed in the ALJ's decision (R. 20), but considerable weight was accorded to such findings within Dr. Mouhanna's treating and consulting notes to the extent that they constitute opinion evidence (R. 21).[4]

The ALJ's decision reveals consideration of the entire record in making her decision, including her determination that Dr. Mouhanna's opinions contained within his disability questionnaire should be accorded little weight. This determination is supported by substantial evidence including numerous testing records and medical notes showing minimal or insignificant abnormalities, such the x-rays of Plaintiff left ankle and knee that revealed no fracture, dislocation or degenerative changes (R. 239-40), and an April 2017 MRI of her lumbar spine showing "there were no significant intra or extradural abnormalities and that the somatic alignment and disc space height and hydrations were maintained" (R. 21; 255). Moreover, the ALJ's finding, that Dr. Mouhanna's conservative treatment is inconsistent with his questionnaire opinions, is also a valid ground for affording his opinion little weight. *See Womble v. Comm'r of Soc. Sec*., 705 F. App'x 923, 928 (11th Cir. 2017) (finding good cause existed for discounting the opinions of plaintiff's treating physicians where the ALJ concluded "the opinion was not supported by his own treatment notes given [plaintiff]'s conservative . . . treatment," noting that plaintiff "was routinely prescribed physical therapy rather than surgery" to treat back pain). Where, as here, the ALJ articulated

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec*., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(a)(2)).

specific reasons for affording little weight to a treating physician that are supported by substantial evidence, the ALJ's determination is not to be disturbed by the Court. *Ross*, 794 F. App'x at 861; *Hunter*, 609 F. App'x at 558.

### B. Assessment of State Agency Physicians

Plaintiff further contends that the ALJ erred in assigning great weight to the opinions of the state agency medical consultants, when little weight was assigned to Plaintiff's treating physician. Specifically, Plaintiff argues that the opinions of the state agency consultants contradict that of the treating physician, and that one of the state agency consultants, Kendrick, was identified as an single decision maker ("SDM") and thus could not be relied upon. As an initial matter, the Court recognizes that it is error to primarily rely on a SDM's assessment in determining a Plaintiff's RFC. *See Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 872 (11th Cir. 2012). Here, however, the ALJ did not primarily rely on the opinion of Kendrick. The ALJ also afforded great weight to the assessment of state agency physician, Dr. Lawhorn (R. 21), who found Plaintiff was capable of performing sedentary work—a finding that is consistent with the RFC (R. 80). Despite Plaintiff's contentions, this finding was not based on "woefully incomplete evidence" (ECF No. 18 at 7-18). Rather, Dr. Lawhorn's opinion was based on Dr. Mouhanna's medical records including Plaintiff's cervical spine x-ray, EMG, lumbar spine x-ray, left ankle x-ray and left knee x-ray (R. 75). Moreover, the ALJ afforded considerable weight to those opinions of Dr. Mouhanna contained within his treatment and medical notes (R. 21). These opinions include Plaintiff's full range of motion in her upper extremities and cervical spine, and decreased range of motion or pain to range of motion in her lower extremities and lumbar spine, which is consisted with the ALJ's RFC assessment that Plaintiff is able to perform sedentary work. Having found that the state agency consultants' opinions to be consistent with the objective medical evidence in the record,

and that  good cause was shown for discounting Dr. Mouhanna's opinion within his disability questionnaire, the ALJ did not commit reversable error in affording the state agency consultants' opinions greater weight than Plaintiff's treating physician. *See Forsyth v. Comm'r of Soc. Sec*., 503 F. App'x 892, 893 (11th Cir. 2013) (finding the ALJ properly afforded more weight to the non-examining physician where good cause was shown to discount treating physician). Furthermore, because the ALJ relied on both state agency consultants' opinions as well as those opinion of Dr. Mouhanna contained within his treatment and medical notes, the RFC is supported by substantial evidence.

### C.  Assessment of Plaintiff's Subjective Allegations

When a plaintiff attempts to prove disability based on his subjective complaints, she must provide evidence of an underlying medical condition and offer either (1) objective medical evidence confirming the severity of her alleged symptoms, or (2) evidence establishing that her medical condition could reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes that she has an impairment that could reasonably expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *Id*. Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record (R. 19). Specifically, the ALJ explained that:

> While the claimant does have scoliosis and disc narrowing, imaging of her cervical and lumbar spine performed demonstrated that the vertebral body heights were preserved. Imaging of her left ankle and knee showed no fractures or degenerative changes. The claimant's testimony reflects that she has been able to continue

engaging in activities of daily living including cooking meals, housework, grocery shopping, and taking care of her own hygiene. The claimant has not sought aggressive treatment and has instead treated her symptoms with pain medication. Further, while the claimant has been advised to proceed with physical therapy, the record does not show that she has done so. Likewise, although she was prescribed a brace, the claimant does not ambulate with an assistive device. Moreover, the record indicates that the claimant stopped working due to a business-related layoff rather than because of the allegedly disabling impairments. There is no evidence of a significant deterioration in the claimant's medical condition since that layoff.

(R. 20-21) (internal citations omitted).

First, Plaintiff avers that the ALJ erred in finding that that the objective evidence conflicted with Plaintiff's testimony about her symptoms because the ALJ overlooked evidence in the record, such as the EMG study and finding of antalgic gait and pain with lower extremity range of motion. However, as discussed above, the ALJ properly addressed all evidence in the record in her analysis, including the evidence raised by Plaintiff in her Motion (*see id.*). Nor does the ALJ rely on an absence of objective medical evidence, as inferred by Plaintiff. Rather, the ALJ highlights specific and substantial evidence that contradicts Plaintiff's subjective claims, such as imaging of Plaintiff's cervix and lumbar spine demonstrating that vertebral body heights were preserved and imaging of Plaintiff's knee showing no fractures or degenerative changes (R. 20).

Plaintiff further asserts that the "ALJ also erred in finding that Ms. Villas' ability to cook, do housework, go grocery shopping, and take care of personal hygiene meant she was not credible" and in finding that Plaintiff's "symptoms were unsupported because she 'has no [sic] sought aggressive treatment and instead treated her symptoms with pain medication'" (ECF No. 18 at 20). However, consideration of daily activities and treatment methods are proper in assessing a plaintiff's subjective complaints. *See Dyer*, 395 F.3d at 1212  (finding the ALJ adequately explained his finding that plaintiff's subjective complaints to be inconsistent with the evidence where the ALJ consider plaintiff's activities of daily living and the types and dosages of medication

18

prescribed to plaintiff). Plaintiff argues that more aggressive treatment in the form of injections was recommended to Plaintiff; notwithstanding, the record evidence shows that Plaintiff has managed her symptoms without any treatment beyond medication and the ALJ's determination that this is inconsistent with Plaintiff's subjective complaints is supported by substantial evidence (R. 20-21).

Lastly, Plaintiff claims that the ALJ failed to properly consider Ms. Villas alleged medication side effects. However, Plaintiff does not explain how these side-effects would affect or otherwise alter the ALJ's finding that the intensity, persistence, and limiting effects of Plaintiff's symptoms are not entirely consistent with the medical evidence and other evidence in the record. While the ALJ is not required to discuss every piece of evidence in making her decision, *see Dyer*, 395 F.3d at 1211, the ALJ's decision recited Plaintiff's testimony including the fact that Plaintiff's medications made it difficult to concentrate or drive (R. 19).  As such, the undersigned finds that the ALJ did not commit reversible error in finding the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

## V.   RECOMMENDATION

For the forgoing reasons, the undersign respectfully recommends that Plaintiff Marie Villas' Motion for Summary Judgment (ECF No. 18) be **DENIED** and that Defendant Andrew Saul's, Commissioner of the Social Security Administration, Motion for Summary Judgment (ECF No. 19) be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Federico A. Moreno, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report

and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 20th day of July, 2021.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE